IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DONALD RAY BAILEY, JR.,**

       Petitioner,

v.                                     Civil Action No. **3:12CV537**

**D.A. BRAXTON,**

       Respondent.

## MEMORANDUM OPINION

Donald Ray Bailey, Jr., a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Pet.").[1]  Bailey challenges his convictions in the Circuit Court of the City of Norfolk ("Circuit Court").  Bailey demands relief upon the following grounds:[2]

| | |
|---|---|
| Claim A | Counsel provided ineffective assistance by failing to object to or request a curative instruction with respect to Joy Reefer's prejudicial testimony about Bailey's prior incarceration. |
| Claim B | Counsel provided ineffective assistance by failing to conduct an adequate voir dire. |

| | | |
|---|---|---|
| Claim D | (1) | The prosecutor engaged in misconduct by knowingly presenting perjured testimony from Lavar Johnson. |
| | (2) | The prosecutor engaged in misconduct by knowingly presenting perjured testimony from Lamont Stewart. |
| | (3) | The prosecutor engaged in misconduct by knowingly presenting perjured testimony from Robert Reed. |

---

[1] The Court employs the pagination assigned to Bailey's § 2254 Petition and its attachments by the Court's CM/ECF docketing system.

[2] In order to avoid confusion, the Court utilizes the labels Respondent employs and Bailey adopted for Bailey's claims. (*See, e.g.,* Pet'r's Resp. (ECF No. 21) 1–12.) Bailey omitted a Claim C and a Claim H from his § 2254 Petition.

Claim E          The prosecution engaged in misconduct by failing to disclose to the defense a detective's notes regarding statements provided by Monica Harris and Tremaine Baskerville.

Claim F          Counsel performed deficiently by failing to secure Damon Rodgers as a witness to testify for the defense at Bailey's trial.

Claim G          The Circuit Court should not have permitted Stewart's tainted identification of Bailey as the perpetrator.  Counsel erred by failing to pursue this issue on appeal.

Claim I          Insufficient evidence existed to establish premeditation on the part of Bailey.  Counsel performed deficiently by failing to challenge on appeal that the evidence failed to establish premeditation on the part of Bailey.

Respondent has moved to dismiss on the ground that Bailey's claims lack merit.  Bailey has responded[3] and filed a Motion to Amend (ECF No. 22.)  For the reasons set forth below, the Motion to Dismiss (ECF No. 11) will be GRANTED and the Motion to Amend (ECF No. 22) will be DENIED.

## I. PROCEDURAL HISTORY

A jury in the Circuit Court found Bailey guilty of one count of first degree murder, two counts of malicious wounding, and three counts of use of a firearm in the commission of a felony.[4] *Commonwealth v. Bailey*, Nos. CR06002040–18 through CR06002040–22, at 1–2 (Va. Cir. Ct. May 16, 2008); *Commonwealth v. Bailey*, No. CR06002341–03, at 1 (Va. Cir. Ct. Apr. 24, 2008).  Thereafter, the Circuit Court sentenced Bailey to fifty-two years of imprisonment.

---

[3] Bailey filed a Motion for Abeyance (ECF No. 20) wherein he asked the Court to forestall any ruling on the Motion to Dismiss (ECF No. 22) until he receives assurances from the Court that it will consider his Response to Respondent's Motion to Dismiss ("Petitioner's Response") ECF No. 21).)  Because the Court will consider Petitioner's Response, the Motion for Abeyance (ECF No. 20) will be DENIED AS MOOT.

[4] The Circuit Court conducted two prior trials on these charges.  The first ended in a mistrial and the second ended in a hung jury. (*See* Aug. 26, 2008 Tr. 46–47.)

*Commonwealth v. Bailey*, Nos. CR06002040–18 through CR06002040–22, at 2 (Va. Cir. Ct. Apr. 29, 2009); *Commonwealth v. Bailey*, No. CR06002341–03, at 1 (Va. Cir. Ct. Apr. 29, 2009).

Bailey appealed. On appeal to the Court of Appeals of Virginia, Bailey asserted: (1) "[T]he jury should not have been instructed on principal in the second degree because there was no evidence that [Bailey] was merely present, aiding, abetting or encouraging the shooting of the victim." *Bailey v. Commonwealth*, No. 1037–09–01, at 1 (Va. Ct. App. Dec. 23, 2009) (footnote omitted); (2) "[T]he trial court erred in failing to grant his motion to set aside the jury verdict and order a new trial based on after-discovered evidence." *Id.* at 2; and, (3) "[T]he trial court erred in failing to grant a new trial because the Commonwealth withheld investigative notes that contained exculpatory evidence." *Id.* at 3. The Court of Appeals of Virginia denied Bailey's petition for appeal. *Id.* at 1.

Thereafter, Bailey pursued an appeal to the Supreme Court of Virginia wherein he raised only the second and third issues he had presented to the Court of Appeals of Virginia. Petition for Appeal at 3–4, *Bailey v. Commonwealth*, No. 101005 (Va. filed May 26, 2010). The Supreme Court of Virginia refused Bailey's petition for appeal. *Bailey v. Commonwealth*, No. 101005, at 1 (Va. Oct. 15, 2010).

On October 11, 2011, Bailey filed a petition for a writ of habeas corpus in the Circuit Court, which exceeded two hundred pages, wherein he raised many of his present federal claims for habeas relief. *See* Petition for Writ of Habeas Corpus, *Bailey v. Braxton*, No. CL11-7379 (Va. Cir. Ct. filed Oct. 11, 2011). On February 22, 2012, the Circuit Court issued a letter opinion that dismissed Bailey's claims. *Bailey v. Braxton*, No. CL11–7379, at 1–3 (Va. Cir. Ct. Feb. 22,

2012) ("*State Habeas Op.*").[5]  On March 14, 2012, the Circuit Court issued a final order and

specified, as pertinent here, that Bailey had procedurally defaulted those portions of his claims

that asserted the Circuit Court should not have permitted Stewart's tainted identification of

Bailey as the perpetrator (§ 2254 Claim G) and challenged the sufficiency of the evidence with

respect to premeditation on the part of Bailey (§ 2254 Claim I).  *Bailey v. Braxton*, No. CL11–

7379, at 1 (Va. Cir. Ct. Mar. 14, 2012) (citing *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974)).

Bailey appealed.  The Supreme Court of Virginia refused Bailey's Petition for Appeal.  *Bailey v.*

*Braxton*, No. 120945, at 1 (Va. Sept. 28, 2012).

## II. EXHAUSTION AND PROCEDURAL DEFAULT

State exhaustion "'is rooted in considerations of federal-state comity,'" and in

Congressional determination via federal habeas laws "that exhaustion of adequate state remedies

will 'best serve the policies of federalism.'"  *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D.

Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)).  The purpose of

the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971)

(internal quotation marks omitted).  Exhaustion has two aspects.  First, a petitioner must utilize

all available state remedies before he can apply for federal habeas relief.  *See O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 844–48 (1999).  As to whether a petitioner has used all available state

remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the

remedies available in the courts of the State . . . if he has the right under the law of the State to

raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

---

[5] The Court employs the case number found on the *State Habeas Opinion* for all citations
to the Bailey state habeas case.

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

5

501 U.S. at 735 n.1).[6] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Citing *Slayton*, the Circuit Court found that Bailey had defaulted the non-ineffective assistance of counsel aspect of Claims G and I by failing to raise such claims on direct appeal to the Supreme Court of Virginia. *Bailey v. Braxton*, No. CL11–7379, at 1 (Va. Cir. Ct. Mar. 14, 2012) (citing *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974)).[7] *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Bailey procedurally defaulted the non-ineffective assistance of counsel aspects of Claims G and I. To the extent Bailey asserts that the ineffective assistance of counsel constitutes cause excusing his default, the Court rejects that assertion for the reasons set forth *infra* Part V.C.

## III. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

---

[6] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

[7] Because the Supreme Court of Virginia summarily refused Bailey's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Circuit Court. *See White v. Johnson*, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[8]

## IV. SUMMARY OF THE EVIDENCE

On December 17, 2005, at around 8:00 or 9:00 p.m., Lamont Stewart and his brother, Corey Cuffee, went to a bar called Wings and Paradise ("Paradise"). (Mar. 31, 2008 Tr. 103–04.) While Stewart and Cuffee were at the bar, an associate of theirs, Anthony Reed ("Reed"), was shot and killed. (Mar. 31, 2008 Tr. 105–07.)

Thereafter, Stewart and Cuffee left the bar and went to the nearby home of Monica Harris at Apartment A, 3514 Seay Avenue. (Mar. 31, 2008 Tr. 21, 107.) Harris was hosting a selling party, where the host sells food and drink. (Mar. 31, 2008 Tr. 21.) After a while, Cuffee opened

---

[8] In light of the foregoing statutory structure, the Virginia courts' factual findings and disposition of Bailey's claims figures prominently in this Court's opinion.

the front door to some newcomers and asked, "'Ya'll know these niggers?'" (Mar. 31, 2008 Tr.

109.) Stewart looked to the door to see who Cuffee "was talking about." (Mar. 31, 2008 Tr.

114.) Stewart testified that he saw Donald Bailey and Terrence Hines at the door and that Bailey

was firing a gun into the house.[9] (Mar. 31, 2008 Tr. 114.) After the shooting started, Stewart

testified, "Everybody was running, panicking, screaming, trying to get out." (Mar. 31, 2008 Tr.

116.) Stewart went to the back door of the house and saw Bailey and Hines shooting into the

back of the house. (Mar. 31, 2008 Tr. 116.) Stewart found Cuffee dead on the floor in the

kitchen. (Mar. 31, 2008 Tr. 117, 119.) Stewart fled the scene and went to a friend's house.

(Mar. 31, 2008 Tr. 118.) Tremaine Baskerville and Austin Howard also received gunshot

wounds. (Mar. 31, 2008 Tr. 62, 86.)

In the early morning hours of December 18, 2005, Bailey phoned Lavar Johnson from the

Paradise.[10] (Mar. 31, 2008 Tr. at 151–52, 171.) Bailey was "hysterical" and wanted to know

who killed Reed. (Mar. 31, 2008 Tr. 152, 171.) After their initial conversation, Johnson had a

second conversation with Bailey where Johnson told Bailey about a selling party in Ingleside.

(Mar. 31, 2008 Tr. 152–53.) Johnson relayed information he had from a friend about Reed's

killing. (Mar. 31, 2008 Tr. 161.) Specifically, Johnson swore, "I told Bailey that my friend told

me that it was involved -- some Ingleside guys was involved with it." (Mar. 31, 2008 Tr. 161.)

Johnson told Bailey that "the Ingleside guys" would be at the selling party. (Mar. 31, 2008 Tr.

153.)

---

[9] Stewart testified, "There's no question" that Bailey and Hines were the shooters.
(Mar. 31, 2008 Tr. 123.)

[10] Johnson told the police about Bailey's involvement in the Seay Avenue shooting, about
a month after the shooting, when Johnson was in custody on a gun charge. (Mar. 31, 2008
Tr. 156.)

About an hour after giving Bailey the information about the selling party, Johnson had another phone conversation with Bailey. (Mar. 31, 2008 Tr. 153.) Bailey told Johnson that, "he shot him. He said he knocked on the door. The door opened. He start [sic] shooting." (Mar. 31, 2008 Tr. 154.) "[Bailey] said he shot the dude in the chest." (Mar. 31, 2008 Tr. 154.) Bailey told Johnson that the shooting had occurred on Seay Avenue. (Mar. 31, 2008 Tr. 154.) The next day Johnson saw Bailey and Hines at Robert Reed's home.[11] (Mar. 31, 2008 Tr. 155, 157.)[12]

The morning after Anthony Reed's murder, "Damian Rogers"[13] came over to Robert Reed's home. (Apr. 1, 2008 Tr. 280.) Shortly thereafter, Bailey and Hines arrived at Robert Reed's home. (Apr. 1, 2008 Tr. 282.) The men discussed Anthony Reed's murder. (Mar. 31, 2008 Tr. 282–83.) Robert Reed explained, "When Anthony got murdered, we were trying to figure out who was responsible for him, and [Bailey] had said he had [sic] knew who was responsible; and he had said that he had already took [sic] care of that business, took care of it." (Apr. 1, 2008 Tr. 283.) Robert Reed asked Bailey who had murdered Anthony Reed. (Apr. 1, 2008 Tr. 283.) Bailey said, "'Those Ingleside boys.'" (Apr. 1, 2008 Tr. 283.) Bailey told

---

[11] Robert Reed was Anthony Reed's uncle. (Mar. 31, 2008 Tr. 155.)

[12] The prosecution introduced phone records which the Circuit Court found "corroborated" Johnson's account of his phone conversations with Bailey. *Commonwealth v. Bailey*, No. CR06-2040, at 2 (Va. Cir. Ct. Dec. 31, 2008) (*"New Trial Op."*).

[13] Mr. Rodgers's first and last name are not spelled consistently in the state court records. When not quoting directly, the Court employs the spelling of Mr. Rodgers name as it appears in the transcript of the August 26, 2008 hearing. (Aug. 26, 2008 Tr. 26–27.)

Robert Reed that, "he went over to the house, and the first person that opened the door, he just let the clip go." (Apr. 1, 2008 Tr. 283.)[14]

Ebony Robinson testified for the defense. (Apr. 2, 2008 Tr. 366–67.)  Robinson testified that she spoke with Lamont Stewart shortly after the shooting in Ingleside. (Apr. 2, 2008 Tr. 368–69.)  Stewart told Robinson that he did not see who did the shooting in Ingleside. (Apr. 2, 2008 Tr. 369.)

Joy Reefer testified for the defense. (Apr. 2, 2008 Tr. 388.)  Reefer testified she was at Paradise on the night of Anthony Reed's murder until approximately 2:45 a.m., but never saw Bailey there. (Apr. 2, 2008 Tr. 389.)  Reefer knew Bailey and Anthony Reed. (Apr. 2, 2008 Tr. 388–89.)  Reefer asserted Bailey and Anthony were not close friends. (Apr. 2, 2008 Tr. 390.) On cross-examination, Reefer admitted she was friends with Bailey and talked to his parents "on a regular basis." (Apr. 2, 2008 Tr. 395.)[15]

---

[14] Robert Reed waited until after he was arrested for possession of a firearm by a convicted felon to come forward to tell the police the above information. (Apr. 1, 2008 Tr. 285.) Robert Reed explained that he later learned that the man Bailey had killed had nothing to do with the murder of Anthony Reed. (Apr. 1, 2008 Tr. 311.)

[15] As the prosecutor probed these relationships, the following exchange occurred:

> [Prosecutor]  So you'd say you're more friendly with his parents than you are with him?
> [Reefer]  I'm friends with both of them.
> [Prosecutor]  But it sounds like you talk to the parents more than you talk to --
> [Reefer]  Well, he has been incarcerated for three years, so I haven't really been able to talk to him.

(Apr. 2, 2008 Tr. 397.)  This above exchange provides the basis for the claims of ineffective assistance of counsel set forth in Claims A and B.

10

The jury found Bailey guilty of the murder of Corey Cuffee, the malicious wounding of Austin Howard and Tremaine Baskerville, and three related firearm counts. (Apr. 2, 2008 Tr. 453–54.)

After his conviction, Bailey filed motions for a new trial based upon, *inter alia*, after discovered evidence. *New Trial Op.*, at 1. Bailey's newly discovered evidence tended to impeach Robert Reed's testimony that on the morning of December 15, 2005, Bailey appeared at Reed's home and confessed in the presence of Reed and Damon Rodgers to shooting Cuffee. *Id.* at 2. Specifically, at the after-trial hearing, Rodgers testified that Bailey never appeared at Reed's home on the morning of December 15, 2005. *Id.* The Circuit Court concluded that given the weight of the evidence against Bailey, Rodgers's testimony would not have produced a different result at trial and denied the motion. *Id.*

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The second component of *Strickland*, the prejudice component, requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

11

*Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not

necessary to determine whether counsel performed deficiently if the claim is readily dismissed

for lack of prejudice.  *Id.* at 697.

## A.    Claims A and B

In Claim A, Bailey faults counsel for not objecting or demanding a curative instruction

when Reefer mentioned that Bailey had been incarcerated for three years.[16]  *See supra* n.15.  In

rejecting this claim on state habeas the Circuit Court noted:

> [Reefer's remark] was an unresponsive answer to a question from the prosecutor
> on cross-examination.  The statement was brief and the prosecutor did not ask any
> additional questions about the petitioner's incarceration.  Coming on the third day
> of trial, [defense counsel's] explanation . . . that he did not want to emphasize that
> statement by objecting to it or requesting a curative instruction is a credible
> explanation of a reasonable tactical trial decision.  Even if I were to find that
> [defense counsel's] performance was deficient because he failed to object to this
> testimony, I find that the petitioner was not prejudiced under *Strickland v.
> Washington*, 466 U.S. 668 (1984), because there is no reasonable probability
> considering the totality of the evidence that the result of the trial would have been
> different.

*State Habeas Op.* 1–2.  Under the foregoing circumstances, counsel acted reasonably in not

objecting and risking emphasizing the fact of Bailey's incarceration to the jury.  *See Evans v.

Thompson*, 881 F.2d 117, 125 (4th Cir. 1989).  Furthermore, Bailey fails to demonstrate a

reasonable probability of a different result had counsel objected or requested a curative

instruction.[17]  Accordingly, Claim A will be DISMISSED.

---

[16] This three-year period of incarceration flowed from Bailey's detention pending the trial
of the charges that are the subject of the present petition for a writ of habeas corpus.

[17] Lamont Stewart already had testified that Bailey was incarcerated in 2006. (Mar. 31,
2008 Tr. 147.)

In a related vein, in Claim B, Bailey insists that, during jury selection, counsel should have asked the jury whether they would be prejudiced against Bailey because of his prior incarceration.  In dismissing this claim, the Circuit Court observed:

> The defendant did not plan to testify . . . and he did not testify. . . .  [T]here was no proper reason to ask the jury panel such a question.  Finally, how was [defense counsel] to know during voir dire that the witness Reefer two days later would give an unresponsive answer on cross-examination about the petitioner's incarceration?

(*States Habeas Op.*, at 2.)  Considering the circumstances facing counsel during voir dire, counsel reasonably declined to pursue the question urged here by Bailey.  *See Strickland*, 466 U.S. at 689 (emphasizing the need to evaluate counsel's conduct based upon the circumstances then known to counsel).[18]  Claim B will be DISMISSED because Bailey fails to demonstrate deficiency on the part of counsel.

## B.   Claim F

In Claim F, Bailey asserts that counsel performed deficiently by failing to secure Damon Rodgers as a witness to testify in Bailey's defense.  Bailey fails to demonstrate deficiency on the part of counsel.  "[Bailey] can hardly complain that [defense counsel] failed to ascertain the identity of Damien Rogers when [Bailey] had known Rogers for years but told [counsel] he had never heard of him."  *State Habeas Op.*, at 3 (citation omitted).  Accordingly, Claim F will be DISMISSED.

---

[18] Additionally, because the prosecution's three key witnesses, Stewart, Johnson, and Reed had to admit to their prior incarceration, during voir dire counsel had every incentive to leave undiminished any prejudice a potential juror may have had to an individual's incarceration.

## C.   Claims G and I

In Claim G, Bailey faults counsel with respect to counsel's handling of Lamont Stewart's identification of Bailey as the person who shot into the residence on Seay Avenue. In the end, the only notable omission Bailey identifies is counsel's failure to challenge the denial of the motion to suppress on appeal.[19] (*See* Pet'r's Resp. (ECF No. 21) 11–12.) "Counsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). "Appellate counsel . . . enjoys a presumption that he decided which issues were most likely to afford relief on appeal, a presumption that a defendant can rebut only when ignored issues are clearly stronger than those presented." *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) (citations omitted) (internal quotation marks omitted). Bailey fails to demonstrate that appealing the denial of the motion to suppress was clearly

---

[19] During his cross-examination of Stewart, counsel had Stewart acknowledge that during an April 12, 2006 police interview, Stewart told police that he did not see his brother open the door. (Mar. 31, 2008 Tr. 133–34.) Additionally, counsel exposed the jury to the fact that in that same interview Stewart failed to identify Bailey as one of the individuals who had shot into the house, even though Stewart had "known Donald Bailey [his] entire adult life." (Mar. 31, 2008 Tr. 133–35, 140.) Counsel further exposed the jury to the fact that Stewart only identified Bailey as a shooter at Seay Avenue after Stewart attended Bailey's preliminary hearing where Lavar Johnson and Robert Reed implicated Bailey in the Seay Avenue shooting. (Mar. 31, 2008 Tr. 144–46.) Additionally, on September 8, 2006, counsel filed a motion to suppress Stewart's identification of Bailey. *State Habeas Op.*, at 3. The Circuit Court denied the motion. *Id.*

stronger than the issues counsel raised on appeal.[20] *See supra* Part I.  Accordingly, Claim G will be DISMISSED because Bailey fails to demonstrate deficiency on the part of counsel.

Similarly, in Claim I, Bailey asserts that insufficient evidence existed to establish premeditation on his part and that counsel performed deficiently by failing to raise the issue on appeal.  The evidence reflected that Bailey went to the home where he thought the individual or individuals responsible for killing Anthony Reed were located.  When the door to the home opened, Bailey shot Cuffee and continued to fire into the home.  Counsel reasonably declined to raise this frivolous issue on appeal.  Claim I will be DISMISSED.

## VI. PROSECUTORIAL MISCONDUCT

### A.   Claims D(1) through D(3)

In Claims D(1) through D(3), Bailey asserts that the prosecution knowingly presented false testimony from Lavar Johnson, Lamont Stewart, and Robert Reed.  To prove a violation of due process based on false testimony, a petitioner must prove his conviction was "obtained through use of false evidence, known to be such by representatives of the State." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted); *see United States v. Tanner*, 61 F.3d 231, 236 (4th Cir. 1995) (requiring a defendant to prove "the prosecution knew or should have known at trial" that testimony was false in order to establish a Due Process violation (citing *Napue*, 360 U.S. at 269)).  A convicted defendant bears a "heavy burden" in demonstrating that a witness testified falsely. *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987).  Mere variations or inconsistencies in a witness's testimony fail to demonstrate the witness testified falsely, much

---

[20] Stewart testified that he had known Bailey for a long time and that his initial failure to identify Bailey to police flowed from a desire to exact his own vengeance and to keep his family out of danger.  (Mar. 31, 2008 Tr. 119–123, 139–40.)

less that the prosecution knew the witness testified falsely.  *Tanner*, 61 F.3d at 236; *Griley*, 814

F.2d at 971 (citing *Overton v. United States*, 450 F.2d 919, 920 (5th Cir. 1971)).

Although Bailey lists scores of purported false statements by the witnesses (*see* § 2254

Pet. (ECF No. 1-3) 1-30; (ECF No. 1-4) 1-27; (ECF No. 1-5) 1-33), he fails to demonstrate

that the statements by the witnesses were false, much less that the prosecution knew the

statements to be false.   In rejecting these claims, the Circuit Court aptly observed:

> The petitioner shows many inconsistencies in the testimony of Lavar Johnson,
> Lamont Stewart, and Robert Reed.  The petitioner had a preliminary hearing, a
> suppression hearing, and three trials.  It appears Johnson testified at the
> preliminary hearing and the third trial; Stewart and Reed testified at all three
> trials.  The police also interviewed at least Stewart.
>
> It would be truly remarkable under these circumstances if there were no
> inconsistent statements.  Witnesses in homicide cases are often uncooperative for
> any number of reasons and they often change their versions of events.
> Furthermore, memories can fade, when, as here, more than two years pass
> between the commission of the crime and the trial.  To allege that witnesses gave
> inconsistent statements and that the prosecutor knew of the inconsistencies is
> insufficient to establish that a prosecutor knowingly used perjured testimony.
> Inconsistent statements do not necessarily constitute perjury and a prior
> inconsistent statement does not necessarily establish that the trial testimony of the
> witness is perjured. Inconsistent statements may be caused by forgetfulness, a
> misunderstanding of a question at a prior hearing, a refreshed recollection,
> perjury, or other reasons.

*State Habeas Op.*, at 2–3 (internal citation omitted).[21]  Because Bailey fails to demonstrate the

prosecution knowingly used false testimony, the Circuit Court acted reasonably in rejecting these

claims.  *See* 28 U.S.C. § 2254(d)(1)–(2).  Accordingly, Claims D(1) through D(3) will be

DISMISSED.

---

[21] For example, Bailey makes a convoluted argument about whether someone knocked on
the door of the Seay Avenue residence before the shooting started. (ECF No. 1-3, at 17–21.)
Bailey, however, fails to demonstrate that Johnson, Stewart, or Reed testified falsely about a
knock on the door.

## B.    Claim E

In Claim E, Bailey contends that the prosecution engaged in misconduct by failing to disclose to the defense a detective's notes that contained exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011). In order to obtain relief under *Brady* a litigant must "(1) identify the existence of evidence favorable to the accused; (2) how that the government suppressed the evidence; and (3) demonstrate that the suppression was material." *Id.* (citing *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003)). Under the *Brady* analysis, evidence is material if it generates a "'reasonable probability'" of a different result at trial had the evidence been disclosed. *Moseley v. Branker*, 550 F.3d 312, 318 (4th Cir. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The Circuit Court made the following findings and conclusions in rejecting Bailey's *Brady* claim:

> The defendant's pre-sentence report was prepared during the pendency of the motion for a new trial based upon after-discovered evidence. The report contained thirteen pages of notes of the investigating detectives. The defendant contends some of this information is exculpatory and warrants a new trial. To obtain a new trial the defendant must show the evidence was favorable to him either because it is exculpatory or it is impeaching, that it was not disclosed, and that the non-disclosure was "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281–2 (1999). The evidence alleged to be exculpatory is set forth below.

17

Tremaine Baskerville told the police that he heard someone say "Ernest" was outside shooting, and that the occupants inside the apartment were returning fire.   At a second interview with the police Baskerville named four possible suspects he had heard were involved in the shooting, two of whom were Johnson and Ernest Rouse.  What he "heard" would be hearsay, and his listing of possible suspects would also be speculative.   Furthermore, it appears that [defense counsel] knew of the possible involvement of Rouse.   Testimony of Lamont Stewart, March 31, 2008, pp. 36–[37].   The statement that the occupants of the apartment returned fire would have had impeachment value.

Jermarrieo Stigger told the police that Rouse confronted him at the "Wings of Paradise" the night Anthony Reed was killed and that Anthony Reed told Rouse to search Stigger's pockets. He also told the police Stewart had a gun that night. The allegation of Stewart's possession of a gun that night would have had impeachment value if Stigger had testified, but otherwise it was hearsay. Stigger's other statements show Rouse to be an associate of Reed, but it is entirely speculative to believe that the disclosure of this information might have produced a different verdict.

Zeontray Woodward told police that some guys from Alabama were shooting at him near Seay Avenue and that he got his gun and shot at them. Woodward also said Stewart and Rouse were outside. This would also have had some minimal impeachment value.

Lastly, Ella Forrest told the police that Calier Johnson told her that Stewart called Johnson after the shooting and said someone knocked on the door and shot Cuffee. Hearsay on hearsay. Meaningless. Transcript of Lamont Stewart, March 31, 2008, pp. 22, 39–40.

Some of this information should have been disclosed, but even considering all of it I do not find there is a reasonable probability its disclosure would have produced a different result.

*New Trial Op.*, at 2–3. Given the weight of the evidence against him, the Circuit Court

reasonably rejected Bailey's *Brady* claim. *See* 28 U.S.C. § 2254(d)(1)–(2).[22]

---

[22] Specifically, the prosecution introduced evidence reflecting that Bailey was distraught over the killing of Anthony Reed and bent on revenging his murder. Bailey sought help from Johnson in locating Anthony Reed's killer and then confessed to Johnson that, "he shot the dude in the chest." (Mar. 31, 2008 Tr. 154.) Phone records corroborated Johnson's general account of his conversations with Bailey. Additionally, Robert Reed also testified that Bailey had confessed to his participation in the shooting of Cuffee. Finally, Stewart unequivocally identified Bailey as one of the shooters.

## VII. MOTION AND REQUEST TO AMEND

In his Motion to Amend (ECF No. 22) and his Request to Amend (ECF No. 23), Bailey seeks "to include a claim of 'Abuse of discretion' due to the sentencing court's error in judgment in making a ruling that is clearly unreasonable, erroneous, or arbitrary and not justified by the facts or the law applicable in the case." (Mot. Amend 1–2.) Bailey complains that his counsel failed to object at trial or challenge on appeal Bailey's consecutive sentences on the firearm charges.

Bailey cites the Court to the Supreme Court of Virginia's recent decision in *Brown v. Commonwealth*, 733 S.E.2d 638 (Va. 2012). In that case, the Supreme Court of Virginia interpreted section 18.2–53.1 of the Virginia Code, which provides that upon an individual's conviction for use or display of a firearm in committing certain listed felonies:

> any person found guilty thereof shall be sentenced to a mandatory minimum term of imprisonment of three years for a first conviction, and to a mandatory minimum term of five years for a second or subsequent conviction under the provisions of this section. Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

Va. Code Ann. § 8.2–53.1 (West 2013). The Supreme Court of Virginia observed, "The mandatory minimum term must be made to run consecutively with any punishment received for the primary felony. The plain language of the statute does not, however, require that any sentence imposed pursuant to it be run consecutively with punishment received for a crime other than the primary felony." *Brown*, 733 S.E.2d at 640. The Supreme Court of Virginia ultimately held that "multiple sentences imposed pursuant to Code § 18.2–53.1 may be run concurrently." *Id.* at 641. In reaching that result the court overruled *Bullock v. Commonwealth*, 631 S.E.2d 334

19

(Va. Ct. App. 2006), "which states that such sentences may not be run concurrently." *Brown*,

733 S.E.2d at 639 (citing *Bullock*, 631 S.E.2d at 343); *see id.* at 641–42.

To the extent Bailey seek to amend his § 2254 Petition to claim that the Circuit Court

abused its discretion and misinterpreted state law, he fails to state a viable claim for federal

habeas corpus relief. *See Muse v. Brown*, 3:12cv140–HEH, 2013 WL 819729, at *5 (E.D. Va.

Mar. 5, 2013) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S.

764, 780 (1990)). Moreover, Bailey's counsel's failure to anticipate the change in Virginia law

resulting from the Supreme Court of Virginia's decision in *Brown* does not rise to the level of

constitutional ineffectiveness. *See United States v. McNamara*, 74 F.3d 514, 516–17 (4th Cir.

1996); *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) (concluding constitutionally

adequate counsel is not required to anticipate changes in the law). Accordingly, Bailey's Motion

to Amend (ECF No. 22) and Request to Amend (ECF No. 23) will be DENIED.

## VIII. CONCLUSION

Bailey's Motion for Abeyance (ECF No. 20) will be DENIED AS MOOT. The Motion

to Dismiss (ECF No. 11) will be GRANTED. The motions to amend (ECF Nos. 22, 23) will be

DENIED. Bailey's claims will be DISMISSED. The petition for a writ of habeas corpus will be

DENIED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge

issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue

unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Bailey fails to satisfy this standard. A certificate of appealability will be DENIED.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
James R. Spencer
United States District Judge

Date: *9-11-13*
Richmond, Virginia

21